# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 1, 2022      Decided September 23, 2022

No. 21-1132

MICHAEL JOHNSTON,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

MICHAEL MITTMAN,
INTERVENOR

On Petition for Review of an Order of the
Securities and Exchange Commission

*Stephen M. Kohn* argued the cause for petitioner. With him on the briefs was *Todd M. Yoder*.

*Stephen G. Yoder*, Senior Litigation Counsel, Securities and Exchange Commission, argued the cause for respondent. With him on the brief were *Dan M. Berkovitz*, General Counsel, and *Michael A. Conley*, Solicitor.

*Justin Sher* argued the cause and filed the brief for intervenor Michael Mittman in support of respondent.

Before: ROGERS and RAO, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: Michael Johnston petitioned for review of the Securities and Exchange Commission order granting him a whistleblower award for providing original information leading to a successful enforcement action against Citigroup, Inc. Although the SEC agreed the original information Johnston and his team provided to the Commission warranted an award equal to 15 percent of the fine levied against Citigroup, Johnston objects to the Commission's determination that he and his former co-worker Michael Mittman were to divide the award equally as joint whistleblowers.

We dismiss Johnston's petition for want of jurisdiction insofar as he challenges the amount of the award granted to Mittman. We deny the petition insofar as it challenges Mittman's eligibility for an award because the Commission's decision was not arbitrary and capricious, or otherwise contrary to law, nor was its finding of fact unsupported by substantial evidence.

## I.  Background

Michael Johnston was the leader of a financial advisory team at Citi Smith Barney, a subsidiary of Citigroup, Inc. The "Johnston Team" was established in the 1990s and consisted of Johnston, Michael Mittman — the intervenor here — and John Arnold. Johnston was responsible for managing client relations; Arnold and Mittman were junior members of the Team.

In 2008, the Johnston Team brought an arbitration proceeding against Citigroup before the Financial Industry Regulatory Authority. The arbitration concerned approximately $3 billion in investments that Johnston managed in Citigroup's so-called "ASTA/MAT" funds and its "Falcon" Strategy funds. These funds collapsed during the 2008 financial crisis. Johnston continued to lead the Team throughout the arbitration. He retained an attorney, Michael Blumenfeld, to represent the Team.

As Johnston prepared for the arbitration, he claims he discovered, without any input from Mittman or Arnold, that Citigroup made misrepresentations about its "back-tests" —— tests conducted to verify Citi's risk assessment of the ASTA/MAT and Falcon funds using historical investment data.

In July 2010, after making this discovery, the Johnston Team submitted a 25-page report to the SEC detailing the problem. Mittman and Johnston were both present at a meeting on July 26 and 27 in which the two presented the findings of the Team's independent back-tests.

The SEC then brought an enforcement action against Citigroup Alternative Investments, LLC and Citigroup Global Markets, Inc., which resulted in a settlement of $189 million. *See In the Matter of Citigroup Alternative Invs. LLC & Citigroup Glob. Markets Inc.*, Securities and Exchange Commission Release No. 4174 (Aug. 17, 2015). Following the settlement order, the SEC invited whistleblowers to file claims for an award by issuing Notice of Covered Action No. 2015-92. Johnston and Mittman each submitted a timely claim, although Johnston's claim stated he was submitting his on behalf of the Johnston Team as a whole.

In 2020, the SEC's Claims Review Staff issued its Preliminary Order, which recommended that the Commission grant Johnston and Mittman a joint whistleblower award in the amount of $18.9 million — 10 percent of the fine the Commission collected — to be divided equally between the two. The recommendation was supported by the affidavit of a staff attorney, Olivia Zach, who had been the primary SEC point of contact with the Johnston Team. As Johnston notes, her affidavit stated: "While we had significantly more contact with Michael Johnston, we have no insight into how much Michael Mittman had contributed to the materials provided by Johnston." As a result, the SEC viewed the two men as having provided the original information jointly.

Johnston filed multiple objections to the Preliminary Order, introducing affidavits from Arnold and Blumenfeld stating that he alone was responsible for discovering the misrepresentations about the back-tests — the only original information the Johnston Team provided. Mittman did not object to the recommendation, add evidence to the record, or represent that he and Johnston were joint whistleblowers.

In 2021, the SEC issued its Final Order, granting Johnston and Mittman, as joint whistleblowers, 15 percent of the sanctions, or $27 million, to be divided equally. The Commission rejected Johnston's contention that the Johnston Team had made an oral agreement setting out the division of any award among the three members based upon their "financial contributions and non-financial contributions," which Johnston suggested entitled him to approximately 90% of any award.

The Commission relied upon three facts to determine that Johnston and Mittman were joint whistleblowers: (1) The two

men together attended the July 2010 meeting with the SEC as members of a single team and represented by a single attorney; (2) their counsel later submitted a letter stating "I am legal counsel to Messrs. Michael Johnston, Michael Mittman, and John Arnold (the 'Johnston Team')" and characterizing the "original research and independent analysis" submitted to the Commission as "developed by the Johnston Team"; and (3) at no point during the investigation did any member of the Team or its counsel delineate which information each member of the Team had provided.

Johnston timely petitioned this court for review and Mittman moved to intervene. We granted Mittman's motion to intervene. Johnston then moved for summary reversal and Mittman moved to dismiss the petition for lack of jurisdiction. We denied Johnston's motion, and we now deny in part and grant in part Mittman's motion to dismiss, and deny Johnston's petition for review.

## II.     Analysis

Johnston argues there are four reasons to vacate the Commission's award to Mittman: (1) By ignoring the contract between the two and splitting the award evenly, the SEC overstepped its statutory authority; (2) the SEC should have applied the law of joint ventures to determine whether he and Mittman were acting jointly as whistleblowers; (3) having provided no original information to the Commission, Mittman was not eligible for an award; and (4) because the SEC ignored unrefuted evidence that he and Mittman were not joint whistleblowers, the decision to treat them as such was arbitrary and capricious.

For his part, Mittman argues we do not have jurisdiction to consider Johnston's petition because it involves an attack on

the amount of an award. As explained below, the statute governing SEC whistleblowers expressly precludes judicial review of the amount of an award.

## A. Jurisdiction

The statute applicable to whistleblower awards issued by the SEC, 15 U.S.C. § 78u-6, gives the Commission discretion to make three types of determinations: "whether" to make an award, the amount of the award, and "to whom" to make the award. The next sentence allows us to review "[a]ny . . . determination, except the determination of the amount of an award if the award was made in accordance with subsection (b)," which governs the eligibility of a whistleblower for an award. *Id.* § 78u-6(f). In other words, the plain text of the statute allows us to review the SEC's discretionary decisions to make an award and to whom to make an award, but not the amount of an award. Therefore, insofar as Johnston's petition concerns the amount of an award, we do not have jurisdiction to consider it.

Mittman contends we lack jurisdiction to consider any of Johnston's arguments because accepting any of them would change the amount of the award the Commission granted to Mittman, to Johnston, or to each. Johnston counters that we have jurisdiction to consider all his arguments because each argument relates not to the amount of the award but to Mittman's eligibility for an award.

For its part, the SEC argues we can consider Johnston's argument that Mittman was not eligible for an award because he provided no original information, but not his other arguments. We agree with the Commission.

Mittman argues Johnston's petition seeks to circumvent the clear jurisdictional limitation in the statute by portraying his request to reduce Mittman's award as an attack on his eligibility, when it really goes to the amount of his award, which he seeks to reduce from $13.5 million to zero dollars. He further argues Johnston's position would allow any one of multiple whistleblowers to evade the Congress's implicit prohibition of judicial review of the amount of an award by challenging the eligibility of the other whistleblower(s).

Mittman is correct that in the situation in which whistleblowers are determined to be joint whistleblowers over the objection of at least one of them, a petition questioning the eligibility of another of them could have the effect of increasing the award granted to the others. As the SEC points out, however, there is a significant difference between a petition that directly challenges eligibility but could have the indirect effect of reducing the award to one or more whistleblowers and a petition, such as Johnston's, that directly challenges the amount of an award. In other words, Mittman's interpretation is barred by the statutory provision limiting our review to "any . . . determination" the SEC makes about "whether" and "to whom" an award is issued. 15 U.S.C. § 78u-6(f).

Mittman and the SEC persuasively argue a determination that directly affects the amount of an award, but does not bear upon eligibility for an award, is barred from review. Johnston does not directly refute their argument. Instead, he claims each of the arguments he raises goes to Mittman's eligibility, not to the amount of the award. For the reasons that follow, we accept the Commission's position and dismiss the petition for want of jurisdiction over the issues that directly challenge the overall amount or the division of the award between Johnston and Mittman.

We see that three of the arguments Johnston raises directly challenge the division of the award, not Mittman's eligibility for an award: (1) The law of joint ventures bars Mittman from receiving an equal award, a component of the first issue Johnston raises, namely, whether the SEC should have applied the law of joint ventures in its decision; (2) the SEC ignored the parties' contract in deciding to split the award evenly between Mittman and himself, the remainder of the first issue Johnston raises; (3) the authority Congress delegated to the SEC to issue a whistleblower award does not include the power to interpret an agreement between parties to split the award, the second issue Johnston raises. Because these arguments challenge the percentage of the award Mittman should receive, rather than his eligibility for an award, we do not have jurisdiction to consider them. On the other hand, Johnston is correct, as the SEC concedes, that the remainder of Johnston's arguments go to Mittman's eligibility. Therefore, we deny in part and grant in part Mittman's motion to dismiss Johnston's petition, and do not consider Johnston's arguments going to the amount of his award relative to Mittman's.

## B. Provision of Original Information: Legal Arguments

Pursuant to the whistleblower statute, 15 U.S.C. § 78u-6(f), we review the SEC's decisions concerning eligibility for a whistleblower award "in accordance with section 706" of the Administrative Procedure Act, which requires us to set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Therefore, the SEC must have examined "the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

> **1.      A whistleblower may be two or more persons acting jointly**

Johnston argues he is the only whistleblower who "provided" — the key statutory term — original information to the SEC, so he is the only one to whom the SEC could legally grant an award.  The SEC responds that it considered who provided original information at the time it received the information, as required by the whistleblower statute; Johnston and Mittman presented themselves as a team at that time, making both eligible for an award.

As the SEC points out, the plain language of the whistleblower statute requires the SEC to consider whether a party or parties provided information original to the Commission as of the time the information was submitted. First, the statute requires that the Commission, "[i]n any covered . . . action . . . shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action." 15 U.S.C. § 78u- 6(b)(1).   The term "provided" preceding "original information" clarifies the scope of the SEC's inquiry: The Commission must determine whether the information provided was original, that is, not already known to the SEC; whether that information contributed to a "successful enforcement" action; and, if so, whether the applicant (or applicants) for an award is (or are) the person (or persons) who provided the information.   The statute plainly does not reference who developed or discovered the information. *Id.*

Second, the statute defines a whistleblower as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission." *Id.* at (a)(6). Although the statute does not define "jointly," the ordinary meaning of the term is "[i]n common; together." *See* AMERICAN HERITAGE DICTIONARY (2022). Therefore, the one who "voluntarily provided original information" can be either an individual or a group acting in concert, because the definition of whistleblower in (a)(6) applies to the subsequent eligibility provision in (b)(1). Even though the term whistleblower, being singular, ordinarily implies a single individual, the statute explicitly defines the term, and that definition supersedes ordinary usage. *See Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."). Hence the term whistleblower in subsection (b)(1) may refer either to a person or a group of persons acting together. *See* 15 U.S.C. § 78u-6(a)(6), (b)(1).

**2.      An applicant for an award need not have developed the information he provided**

Johnston emphasizes the phrase "provided original information" and argues each individual must have provided original information. The phrase "original information" in 15 U.S.C. § 78u-6(b)(1) means information derived from "the independent knowledge or analysis of a whistleblower" and "not known to the Commission from any other source," *id.* at (a)(3). Because the word whistleblower is singular, Johnston reads this provision as requiring the Commission to parse the information submitted in order to assign responsibility for each part of a submission to an individual whistleblower. The SEC's response is straightforward: The Commission can receive information from a team of people acting together —

as it did here — and consider that information to be original information from "a whistleblower" because, as explained above, that word can refer not only to an individual but also to a group of people.

Johnston does not respond directly to this point, instead arguing the term "provided" does not override the need to consider who "developed" the information; in this he reads the word "developed" into the whistleblower statute, which by its terms makes clear that a whistleblower is the person or group of persons who provided original information regardless of who may have developed it. Indeed, he repeatedly discusses his responsibility for "developing" the back-test, rather than showing he was solely responsible for having "provided" the information to the Commission. Because the SEC's interpretation does not require reading any additional words into the statute, whereas Johnston's would, we adopt the SEC's interpretation.

Johnston next argues that because the definition of whistleblower in § 78u-6(a)(6) does not include the word "original," that term does not apply to the award provision in (b)(1), which does include the word original. The problem with this argument is that the statute plainly contradicts it: The phrase "whistleblowers who voluntarily provided original information" in the award eligibility provision, 15 U.S.C. § 78u-6(b)(1), presumably incorporates the definition of whistleblower in (a)(6), and Johnston gives us no reason to think otherwise.

Johnston next argues that for Mittman to be eligible for an award he must himself have provided original information because a Commission rule says award applicants must meet "all of the [qualifying] conditions." 17 C.F.R. § 240.21F-5(b). Even if that rule, which simply lays out the sequence of the

Commission's decision-making, were a substantive restriction on eligibility for an award, it would not help Johnston. As we have seen, Mittman met "all of the [qualifying] conditions" for eligibility because, as a member of the Johnston Team, he provided original information to the Commission.

3. **The Commission can determine whistleblowers provided information jointly without regard to whether their award applications were submitted jointly**

Johnston next argues that because he and Mittman filed separate award applications, the two cannot be considered joint whistleblowers. As the SEC points out, however, nothing in the statute or its regulations requires the Commission to consider how an individual styles his award application in determining whether he is a joint or solo applicant.

Finally, in an argument so obtuse as to be insulting, Johnston quotes a portion of the SEC's regulations stating "[a] whistleblower must be an individual," from which he purports to infer a whistleblower cannot be two or more individuals acting jointly. 17 C.F.R. § 240.21F-2(a)(2). In fact, the quoted phrase simply distinguishes an individual from "[a] company or other entity" because those entities are "not eligible to be a whistleblower." *Id.* Indeed, the immediately preceding portion of the regulation contradicts Johnston's position because it states: "You are a whistleblower for purposes of Section 21F of the Exchange Act (15 U.S.C. 78u-6) as of the time that, alone or jointly with others, you provide the Commission with [qualifying] information." *Id.* at § 240.21F-2(a)(1).[1]

---

[1] Johnston makes various policy arguments against the SEC's interpretation of the statute. Those arguments were not raised below and are forfeit. *Wallaesa v. FAA*, 824 F.3d 1071, 1078 (D.C. Cir.

In sum, the Commission's conclusion that Mittman and Johnston jointly provided original information was based upon a lawful interpretation of the whistleblower statute.

## C. Joint whistleblower determination: Factual arguments

Johnston argues the SEC ignored evidence contradicting its factual finding that Johnston and Mittman were joint whistleblowers, contrary to both "the APA's arbitrary or capricious [and] substantial evidence standards." Insofar as Johnston raises a factual dispute, we review the Commission's findings of fact to determine only whether they are supported by substantial evidence. *See* 15 U.S.C. § 784(a)(4)) ("The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive.").

Johnston disputes the SEC's determination that he and Mittman were joint whistleblowers because the agency itself identifies the back-test analysis as the key original information received from the Johnston Team, Mittman had no part in developing that information, and the oral agreement among the Team members did not create a partnership of equals. All of this is irrelevant to the question whether, as a matter of fact, Johnston and Mittman acted jointly when they provided information to the SEC.

As to the relevant question, as the SEC found, the record is clear: "[T]hey presented themselves to the Commission as joint whistleblowers when they provided their information to the Commission in July 2010." A single attorney, Mr.

2016) ("[T]here is a near absolute bar against raising new issues — factual or legal — on appeal in the administrative context." (quoting *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002)).

Blumenfeld, represented both men at their meeting with the Commission staff, and later wrote to the SEC on their behalf recounting that "Michael Johnston and Michael Mittman . . . voluntarily presented to the SEC a portion of the original research and independent analysis developed by the Johnston Team pertaining to the Falcon and [ASTA]/MAT Funds." Indeed, Johnston's own award application says not only "The Johnston Group discovered the . . . results of the MAT back-test," which is irrelevant, but also "the Johnston [G]roup was able to conduct their *Independent Analyses* and to present them to the SEC in 2010 and 2011." Therefore, we hold the SEC had substantial evidence that Johnston and Mittman acted jointly when providing the information to the Commission.[2]

Finally, Johnston argues the Commission should have laid out the criteria it used to determine that Mittman and he were joint whistleblowers. The joint whistleblower concept comes directly from the award statute. The SEC did not apply the term to some exotic or counterintuitive set of facts; we will not require the SEC to explain why it adhered to the ordinary meaning of a statutory term.[3]

---

[2] Johnston also argues the SEC did not respond to his supplemental affidavits and evidence supporting his position that he alone was responsible for developing the back-testing analysis. As we have explained, the Commission must consider who provided the information, rather than who developed it, so this argument is irrelevant.

[3] Johnston argues the SEC's determination that he and Mittman were joint whistleblowers conflicts with the agency's precedents. That argument was not raised in his opening brief and therefore is forfeit. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019).

### III.    Conclusion

The SEC whistleblower statute does not ask who developed the original information that led to a successful resolution of a covered action; instead, it asks who provided that information to the Commission.  The SEC did not err as to the law, nor did it lack substantial evidence as to the facts, in determining that Johnston and Mittman acted as joint whistleblowers when they provided information to the Commission, making Mittman eligible for an award. Johnston's petition for review is therefore

*Dismissed in part and denied in part*.